## GOODHUE et al. *v.* McCLARTY.

Where goods are consigned to a factor with instructions as to the payment of the proceeds, the acceptance of the consignment is an acceptance of the instructions, and an implied promise to obey them; and, under such circumstances, no privilege will attach to the property, in favor of the factor, under art. 3214 of the Civil Code, and the stat. of 17 February, 1841 for any general balance due to him. To apply the property to the payment of the factor's debt, would be inconsistent with the implied promise, and the just expectation of the consignor. But when the instructions further directed that he should retain out of the proceeds of the consignment a sum to be placed to the credit of the consignor, and the amount of certain charges, he will be entitled to retain that sum and the amount of the charges out of the proceeds, in preference to any attaching creditor of the consignor.

APPEAL from the Fourth District Court of New Orleans, *Strawdribge, J. Bradford,* for the appellants. *Mott,* for the defendant and garnishees. The opinion of the court was pronounced by

SLIDELL, J. This case was recently before us upon the controversy between the plaintiffs, as attaching creditors, and *Gilliatt & Co.,* intervenors. *Ante* p. 56. Upon the present appeal we have to consider the conflicting claims of the plaintiffs and the garnishees, *Hewitt, Heran & Co.* As we said, at the former hearing, the tobacco, attached in New Orleans in the hands of *Hewitt, Heran & Co.,* had been shipped by *McClarty* in Kentucky, to their consignment, and with instructions to them, in the letter enclosing the bill of lading, to forward the tobacco to *Gilliatt & Co.* of Liverpool, and to send the ship's bill of lading to *Maitland & Co.* of New York, *McClarty's* agents there, upon whom the letter of instructions authorized *H. H. & Co.* to draw for the expenses in New Orleans, and for a further sum of $300, to be placed to the credit of *McClarty,* on account. These drafts he informed them would be provided for out of *McClarty's* sterling exchange, sold by *Maitland & Co.* Pending the litigation, the tobacco was ordered to be sold by *H. H. & Co.* at private sale, the proceeds to remain subjuct to the further order of the court. They rendered an account of sales, to the court, from which it appeared that, after deducting charges for freight from Kentucky, inspection, drayage, commissions on sales, &c., there remained in the hands of *H. H. & Co.,* nett proceeds, $1,584 97.

After the case between plaintiffs and intervenors was decided by this court, the plaintiffs took a rule on *H. H. & Co.* to show cause why the plaintiffs should not receive this sum of $1,584 97. This rule the garnishees defended, on the ground that they were creditors of *McClarty,* and, as consignees, had a privilege on the property consigned, and its proceeds in their hands. They also contended that, if they had not a right to retain the entire sum, they were at least entitled to retain the sum of $300, for which they had been authorized, by the consignor's letter of advice, to draw upon *Maitland & Co.*

The question then is whether, under the circumstances of this case, the privilege accorded by article 3214 of the Code, and the act of 1841, to consignees, or commission agents, can be claimed by the garnishees. By that article " every consignee or commission agent who has made advances on goods consigned to him, or placed in his hands, to be sold for account of the consignor, has a privilege for the amount of those advances, with interest and charges on the value of the goods, if they are at his disposal in his stores or in a public warehouse, &c."

GOODHUE
v.
McCLARTY.

By the act of 1841, the Code was so amended, " that every consignee, commission agent, or factor, shall have privilege, preferred to any attaching creditor, on the goods consigned to him, for any balance due to him, whether specially advanced on said goods or not, provided they have been received by him." By this statute the privilege was enlarged beyond special advances, and extended to a general balance.

For the proper solution of this question, it is necessary briefly to consider what were the rights of *Hewitt, Heran & Co.* prior to the levy of the attachment. They had received this merchandize under express instructions to forward it to *Gilliatt & Co.* Those instructions having accompanied the consignment, the acceptance of the consignment was an acceptance of the instructions, and an implied promise to obey them. But to have applied the property to the payment of *McCarty's* debt to them, would have been utterly inconsistent with the fulfilment of such implied promise and the just expectation of the consignor. An attempt to do so would in fact have been a fraud upon the consignor. Hence it seems clear that upon the receipt of this property by *Hewitt, Heran & Co.*, a privilege did not attach in their favor for the general balance due to them as the shippers.

This view is fully sustained by the principles of the english mercantile law in the analogous case of lien. By this law the general rule is indisputable that, a factor has a lien on the goods of his principal for his general balance. But it is equally well settled that no right of lien can arise where, from the nature of the contract between the parties, it would be inconsistent with the express terms or the clear intent of the contract. In *Snaith* v. *Burridge*, 4 Taunton, 684, it appears that, a consignment of goods had been made for the express purpose of their being delivered by the consignee into the government stores: it was held that, the possession of the goods gave the consignee no right of lien, because, having accepted the consigement for a particular purpose, he could not, legally, divert it to any other. " If," says Mr. Story, in his treatise on Agency, " the goods are deposited in the possession of the party for a particular purpose inconsistent with the notion of a lien, as to hold them or their proceeds subject to the order of a third person, or to have them transported to another place, or to have them delivered to another person, no lien would attach." § 362. See also *Walker* v. *Birch*, 6 T. R. 259.

Up to the moment, then, of the levy of the plaintiffs' attachment no privilege existed in favor of *Hewitt, Heran & Co.* Such a pretension would have been a fraud upon *McClarty*. So far were they from contemplating it that, *Heran*, in his testimony, declares they would have complied with the instructions and forwarded the property to *Gilliatt & Co.*, if it had not been attached. How is their position changed by the levy of the attachment? Could it bring into existence a privilege which had no existence before?

The argument is that, the creditor of *McClarty*, by exercising his right, has arrested the transmission of the property, and thus frustrated the purpose of the consignment, and that the case stands as though *McClarty* himself had countermanded the shipment: that the plaintiffs are the "*ayants cause*" of the debtor, and cannot be in a better condition than him.

But this proposition will not bear the test of a strict analysis. In a certain sense the seizing creditor represents the rights of his debtor. But their positions are far from identical. The creditor may acquire in the thing seized an interest which the debtor himself could not have enjoyed, by reason of equities existing between him and others, which could not reach the creditor. Thus a creditor

of the vendor of goods paid for by the vendee but not delivered, may attach the goods, although, as between the vendor and vendee the property had passed and the vendor could not dispute the vendee's title. So a second *bonâ fide* purchaser, by recorded title, of land already sold to another by an unrecorded deed, takes a good title, although, as between the first purchaser and the seller, the title of the latter was gone.

The attaching creditor, armed with the power of the law, has diverted the property from its intended appropriation; but we cannot infer from this compulsory change of its destination that the debtor, who consigned the property with the clear intention that the consignee should not employ it to pay himself, has consented to release the consignee from his implied engagement. *Non constat* that *McClarty* desired that *Hewitt, Heran & Co.* should be paid in preference to other creditors. Were we permitted to presume what his wishes would have been, if he had anticipated a contingency which would defeat the transmission of the property to *Gilliatt & Co.*, we should be bound to presume that he would have desired, what the law contemplates as the general rule, an equal distribution of the property among his creditors.

After the levy, *McClarty* was deprived of all control. We have said that up to the moment of the attachment *H. H. & Co.* had no privilege. But the attaching creditors acquired one by their seizure. To disturb the plaintiffs' privilege we must not only recognize a dormant and contingent right of privilege, as having existed in favor of *Hewitt, Heran & Co.*, but, when it is called into life by the adverse seizure, it is to be declared retroactive so as to take rank before the attaching creditor. Thus a legal fiction, for which we find no precedent in our jurisprudence, would be brought into collision with the express enactment of our Code, which declares that a " privilege can be claimed only for those debts to which it is expressly granted ; " in other words, that it is *stricti juris.*

But, while we are of opinion that *Hewitt, Heran & Co.* have no right to apply the entire fund to the payment of *McClarty's* indebtedness to them, it is not so with regard to a portion of it. While it was an implied condition of the consignment that they should not take the whole property to pay themselves, it was the express agreement that they should receive $300. besides the New Orleans charges. The property went into their possession under that agreement, and a right to that extent had vested in them before the plaintiffs' attachment.

It is, therefore, decreed that, the judgment of the District Court be reversed, and that the sum of $1,284 97 deposited in court, be delivered to the plaintiffs, after first deducting therefrom the costs of suit against the defendant ; and that the costs of the rule taken by the plaintiffs upon the garnishees, and of this appeal, be paid by the said garnishees.